UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

JOSEPH F. UVINO AND WENDY M. UVINO,    Chapter 11

                                                              Case No.: 09-15225-brl

                            Debtors.
------------------------------------------------------------x

## ORDER CONFIRMING DEBTORS' SECOND
## AMENDED PLAN OF REORGANIZATION

Joseph F. Uvino and Wendy M. Uvino, the Debtors and Debtors-in-Possession (the "Debtors") having filed with this Court a Second Amended Plan of Reorganization (the "Plan") dated October 20, 2011, and having been filed with this Court on October 27, 2011, and a Second Amended Disclosure Statement (the "Disclosure Statement"), pursuant to Chapter 11 of the United States Bankruptcy Code, dated October 20, 2011, having been filed with this Court on October 27, 2011, and the Disclosure Statement having been approved in accordance with Section 1125 of the Bankruptcy Code, and the Plan and Disclosure Statement having been transmitted to creditors in accordance with Section 1128 of the Bankruptcy Code and pursuant to Order of this Court, and a confirmation hearing having been held before the Hon. Burton R. Lifland, United States Bankruptcy Judge, Southern District of New York, on February 1, 2012 at 10:00 a.m.; and a limited objection to confirmation having been filed by Bank of America, and the Debtors having filed a response thereto; and a limited objection to confirmation having been filed by J. Barrows, Inc. and the Debtors having filed a response thereto; and the Law Offices of Avrum J. Rosen, PLLC by Avrum J. Rosen, Esq., counsel for the Debtors having appeared in support of confirmation, and Buchanan Ingersoll & Rooney PC, by Maureen Bass, Esq., counsel to Bank of America having appeared in opposition thereto, and Dreifuss Bonacci & Parker, LLP

1

by Jeremy D. Platek, Esq., counsel for J. Barrows, Inc. having appeared in opposition thereto; and any objections having been considered to confirmation, either having been resolved by agreement or having been overruled; and

It having been determined after hearing on notice that the requirements for Confirmation set forth in Section 1129(a) of the Bankruptcy Code having been satisfied; and

The Court having made findings of fact and conclusions of law on the record; and

The Court hereby supplementing such findings of fact and conclusions of law with the following:

1. On August 27, 2009, the Debtors filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtors are individuals who reside at 50 East 89th Street, Apt. 22F, New York, New York 10128-1225.

3. Joseph Uvino, is an attorney, who at the time of the filing, practiced at a law firm located in New York City. Mr. Uvino is now self-employed as a reinsurance consultant and earn approximately $15,000.00 per month for his services.

4. At the time of the bankruptcy filing, Wendy Uvino, was employed at LBHI, which was in the midst of administering the Chapter 11 bankruptcy of LBHI. Ms. Uvino was employed at LEH prior to its bankruptcy filing, and was retained post-petition by LBHI as Senior Vice President in the Human Resources Department. Ms. Uvino is currently employed by Natixis North America LLC, as a Managing Director, Head of Human Resources –Americas and earns $230,000.00 per year, and expects a bonus in March of this year in excess of $200,000.00.

5. The Debtors' present problems arose as a result of a number of calamities. First,

2

they embarked upon a construction project to build a home in East Hampton, wherein costs overran their budget.  Consequently, the Debtors were unable to fully complete the project without borrowing additional sums of money. The Debtors have a lawsuit pending against the architect, the construction manager and others in an effort to recover alleged damages they have suffered for, among other things, malpractice and breach of contract.   The trial is currently scheduled to commence on March 5, 2012.  The Debtors estimate that recovery in this action will be between $2 million and $4 million dollars.

6. The Debtors also suffered a significant loss in the stock market due to their portfolio being concentrated in shares of LBHI stock.  With the ultimate demise of that company, the Debtors' sizeable stock portfolio was essentially reduced to zero.  Because of his alleged negligence, the Debtors had litigation pending against their stockbroker for the losses suffered and have just settled that matter subject to court approval, for a net recovery of $150,000.00. Payment on the proof of claim filed in connection with the LEH bankruptcy as and for Wendy Uvino's deferred compensation claim and priority wage claim is expected to bring a recovery of between $100,000 and $150,000 commencing at the end of March 2012.

7. BOA filed a motion for an order pursuant to 11 U.S.C. § 362 lifting the automatic stay with respect to the East Hampton Property.  The Debtors filed opposition to the motion. BOA filed a reply to the Debtors' opposition and the Debtors filed a sur-reply.  A hearing was held on November 19, 2009.  The Court determined that the value of the property was far in excess of the amount claimed to be owed by BOA and that the bank was over-secured and was not entitled to relief from the automatic stay.  On June 14, 2010, BOA filed a notice of withdrawal of its motion for relief from the automatic stay.

8. The Plan has been proposed in good faith and not by any means forbidden by law.

3

9. The Plan complies with §1129 (a) in that it groups similarly situated creditors in the same class. All secured creditors have been placed in separate classes. Each of the two secured claims filed by Bank of America ("BOA") has been placed in its own class. The secured claim of CitiMortgage has been placed in its own class. The secured claims based on mechanics' liens that have been bonded to the extent that the claimant has recourse against the bond, have been placed in their own class. The secured claim of Kolb Mechanical Corp. has been placed in its own class. The Allowed Unsecured Priority Claims of the Internal Revenue Service, New York State Department of Taxation and Finance, and the Franchise Tax Board of California have been placed in their own class. The allowed general unsecured non-priority pre-petition claims have all been placed in one class. Equity has been placed in its own class. There is no convenience class.

10. Pursuant to § 1123, the Plan satisfies §1122 as set forth above.

11. Pursuant to §1123(a)(2), the Plan specifies the classes which are impaired under the Plan. Those classes are Class 5 and Class 7. Pursuant to §1123(a)(3) the Plan specifies the treatment of any class of claims or interest that is impaired under the plan. The treatment of each impaired class is clearly set forth in the Plan in narrative format, as required under §1123(a)(3).

12. Pursuant to §1123(a)(4) all claimants within each class are being treated equally.

13. Section 1123(a)(5) requires that the plan contain "adequate means" for its implementation. Pursuant to that section, the Plan provides that the Debtors shall effectuate the terms of the plan through an infusion of new cash from proceeds from their wages and bonuses from the Debtor Wendy M. Uvino together with $130,000.00 from settlement of a judgment entered against Randy Schindler (which amount funded administration costs) which amounts total after payment of administration costs, the sum of $150,000.00, together with amounts to be

4

obtained as follows: 1) as a result of the construction litigation as more fully described in the Second Amended Disclosure Statement; 2) the arbitration over Lehman Brothers stock which dispute has been settled resulting in the sum of $150,000.00 to the Estate; 3) from resolution of the LBHI litigation in an amount between $75,000.00 to $100,000.00; 4)from a proposed sale of the East Hampton house which has an estimated value of $4.450 million; and 5) and the distribution on claims in the LEH bankruptcy case in the approximate sum of between $100,000.00 to $150,000.00.

14.    Pursuant to §1123(a)(6), the Plan does not contemplate the issuance of non-voting equity securities.

15.    The Plan complies with §§ 1122 and 1123 of the Code.

16.    The Plan has been negotiated and proposed in good faith. The Plan provides for a total payment to the unsecured creditors 100% of their allowed claims payable at 20% of their allowed claim per year for five (5) years without interest. All allowed general unsecured creditors (Class 7) had the option of taking a lump sum payment of 40% of their allowed claim on the Effective Date in lieu of 100% payment over five (5) years. The following creditors elected to take a 100% distribution over 5 years: (1) J. Barrows, who filed a late proof of claim; (2) BOA on its $116,863.00 claim; (3) BOA on its $99,276.00 claim; (4) BOA on its $3,424.00 claim; (5) BOA on its $2,697.00 claim; (6) City National Bank on its $664,762.22 claim; and (7) Tebbens Steel on its $10,000.00 claim. Creditor Citicorp made neither election on their $25,621.91 claim, and will therefore paid 100% distribution over 5 years. The following creditors elected to take a lump sum payment of 40% of their allowed claim: (1) American Express Centurion Bank on its $8,623.44 claim; (2) Kasowitz, Benson, Torres and Friedman on its $4,279.00 claim; and (3) Mark J. Bronsky, DMD on his $875.00 claim. The total amount

5

required on confirmation for those electing a lump sum 40% payment is the amount of $5,510.98 (which is 40% of $13,777.44). The total additional amount that will be needed as and for those creditors who have elected a 100% payment over five (5) years at 20% per year, excluding J. Barrows, is the sum of $922,644.13, which amounts to $184,528.82 per year for five (5) years.

17. Pursuant to a Certification of Ballots, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the Plan, except that BOA disputed that its Class 1 claim is unimpaired and voted to reject the plan claiming that it is impaired.

18. Prior to the hearing on confirmation, Bank of America agreed not to challenge the Debtors' proffer with respect to valuation. However, Bank of America reiterated that any allowed unsecured claim of Bank of America on any allowed claim determined not to be secured or any allowed deficiency claim from the foreclosure action on the East Hampton Property be added to Class 7.

19. As reflected in the Certification of Ballots, notwithstanding that J. Barrows has voted to reject the plan with respect to his Class 7 general unsecured claim, the Debtors indicated that they intend to object to this late filed claim and for purposes of confirmation, did not include this claim when computing totals for Class 7 creditors. That claim was determined to be late filed for the purposes of voting and was not counted in the calculation of Class 7.

20. The Plan provides that, with respect to a claim of a kind specified in §507(a)(2), that on the Effective Date of the Plan, the holder of such claim, will receive, on account of such claim, cash equal to the allowed amount of such claim, or at such later time as any such claims are allowed by the Court, that there will be sufficient funds to pay said claim.

21. There are no claims under §507(a)(1, 3, 4, 5, 6 & 7) in this case.

22. Under this Plan, the creditors in Classes 5 and 7 are impaired and were entitled to vote for the Plan. Classes 5 and 7 have accepted the Plan. Classes 1, 2 3, 4 and 6 were not impaired and were not entitled to vote to reject or accept the plan.

23. Confirmation of this Plan is not likely to be followed by the liquidation or a need for further financial reorganization of the Debtor, or any successor to the Debtor under the Plan.

24. All fees that are payable under §1930 of Title 28 will be paid on the Effective Date of the Plan as required under the Plan. All outstanding quarterly fees owed to the United States Trustee will be paid on the Effective Date of the Plan. The Debtor will continue to file quarterly operating reports and will pay quarterly fees and any accrued interest until the entry of a Final Decree. Unpaid United States Trustee fees accrue interest and will be paid as an expense of the estate and the Reorganized Debtors.

25. The Plan does not provide for the continuation after the Effective Date for all retiree benefits, as the Debtors do not have any retiree benefits.

26. The Plan does not require any governmental approvals.

25. The Plan is not proposed for the principal purpose of the avoidance of taxes, or the avoidance of the application of §5 of the Securities Act of 1993, as it is not a Securities Act matter.

27. Under 11 U.S.C. sec 1129(b) (2)(B), the allowed general unsecured creditors shall receive 100% of their allowed claims payable at 20% of their allowed claim per year for five (5) years without interest. All allowed general unsecured creditors will have the option of taking a lump sum payment of 40% of their allowed claim on the Effective Date in lieu of 100% payment over five (5) years. This Class has accepted the Plan. Under the liquidation analysis, the Plan is fair and equitable as to that Class. In this case, property available for liquidation consists of the

7

Debtors' New York City Residence and the East Hampton Property. Additional amounts include any recovery from the District Court litigation (estimated between $2 million and $4 million), LBHI employment litigation (estimated recovery between $75,000 and $100,000), arbitration proceeding (now settled for $150,000.00) and other assets listed on the Petition (including claims against LBHI which are anticipated to pay between approximately $100,000 and 150,000). If the Debtors' assets are liquidated at fire-sale value, after the payment of Chapter 7 and 11 administrative expenses and all liens of record, there may or may not be a distribution for unsecured creditors. Because this is an individual Chapter 11 Plan that requires the use of post-petition income, payment of 100% of allowed claims over five (5) years as proposed under the Plan are reasonable.

28. Pursuant to Section 1129(b)(2)(B)(ii), the holder of a claim or interest that is junior to the claims of the general unsecured creditors, where the Debtors are individuals, are retaining under the Plan property included in the estate under section 1115, subject to the requirements of 11 U.S.C. 1129(a)(14). Neither debtor is required by a judicial or administrative order, or by statute to pay a domestic support obligation.

29. No other plans were proposed other than the Second Amended Plan filed by the Debtors.

Based on the foregoing,

**IT IS HEREBY ORDERED**

1. That except as modified herein, the Second Amended Plan of Reorganization (the "Plan") dated October 20, 2011, a copy of which is entered on this Court's electronic case filing system as docket number 97 is hereby confirmed.

2. That the Plan is hereby modified to clarify that any Final Allowed Unsecured

Claim of Bank of America on any Allowed Claim that is not allowed as a secured claim from the foreclosure of the property, if any, shall be added to Class 7.

3. That the Plan is further modified to clarify that Bank of America shall retain all of its state court rights to pursue a foreclosure sale as against the East Hampton property, including any default rate interest, expenses or attorneys fees as permitted under the mortgage and note pursuant to state law, but not any deficiency judgment, which shall be included in Class 7.

4. The Plan is further clarified to set forth that this Court shall retain jurisdiction over that portion of the BOA claim that sought attorneys fees and expenses in this case.

5. The Debtors shall make such disbursements to the entities entitled thereto as required under the Plan in accordance with the provisions of the Plan.

6. The Debtors shall pay, by the last day of the month following the entry of this Order, the statutory fees due the Office of the United States Trustee, pursuant to 20 U.S.C. section 1930(a)(6) plus interest.

7. Within ninety (90) days of the Effective Date, or at such other time as the Court may otherwise direct, the Debtor's attorney shall file an application for a Final Decree, showing compliance herein, with the Clerk of the Court.

8. The Clerk of the City of New York, County of Suffolk and all other taxing authorities are directed to accept all transfer documents relating to premises known as 154 Swamp Road, East Hampton, New York 11937 without the payment of any Exempt Taxes as they are defined in section 1.29 of the Plan as follows:    <u>Exempt Taxes</u> - Any and all stamp, transfer, mortgage recording, and other taxes to which the exemption contained in section 1146 (a) of the Bankruptcy Code is applicable, including, without limitation, the New York State Real Estate Transfer Tax and Mortgage Recording Tax, and any taxes imposed by the County of

Suffolk.

9. The Debtors shall file all required reports through the entry of a Final Decree.

10. This Court shall retain jurisdiction over this case as provided for by the terms of the Plan, including, but not limited to the Court, pursuant to Par. 10 (o) of the Plan, entering a Final Order or Decree in the Debtors' Chapter 11 case and entering an Order to reopen the case after all payments have been made under the Plan, to move for the Debtors' discharges to issue.

Dated: New York, New York
       February 15, 2012

/s/Burton R. Lifland
Hon. Burton R. Lifland
United States Bankruptcy Judge