Hearing Date: Dec. 18, 2014<br>
Hearing Time: 10:00am

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JOSEPH F. UVINO and WENDY M. UVINO,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-15225 (CGM) |

**AFFIRMATION OF RICHARD J. SCHAGER, JR. IN**
**OPPOSITION TO MOTION FOR MONEY JUDGMENT**
**OF CREDITOR CITY NATIONAL BANK**

Richard J. Schager, Jr., an attorney admitted to practice in the State of New York and to practice before this Court, affirms under penalties of perjury as follows:

1.  I am a member of the firm of Stamell & Schager, LLP and have appeared in this action on behalf of Debtors in Possession Joseph F. Uvino and Wendy M. Uvino ("Debtors").

2.  This affirmation is submitted in opposition to the Motion for Money Judgment of City National Bank dated October 14, 2014 (Doc 184). It is a revision of my first affirmation (Doc 187) in opposition, and reflects the Court's intervening decision to reopen the case.

3.  CNB's motion should be denied as premature because this case has been reopened to permit Debtors to recover assets from CNB including:

    (a)  All payments made, in an amount to be determined but believed to be in excess of $60,000, on a promissory note with a term of eight (8) weeks, when the principal amount of such note ($664,852) (the "$664K Note") had actually been refinanced into a larger, secured obligation that was later discharged by a subsequent refinancing with a separate bank; and

    (b)  $488,000, based on CNB's receipt of a second payment of such amount after CNB previously (i) acknowledged Debtors' prior discharge of the obligation and (ii) filed a satisfaction of the mortgage securing the obligation (the "$488K Note").

4.  Debtors have demonstrated the need for additional discovery to determine (i) the validity of the $664K Note on which CNB bases its claim, and (ii) why CNB collected a second payment in full on the $488K Note, after previously acknowledging receipt of full payment on and satisfaction thereof. For close to two years now CNB has refused to provide documents that would confirm the validity of these Notes, despite repeated requests by the Debtors to CNB's former and current counsel. Instead, CNB now seeks a judgment by motion as a method to avoid this simple disclosure. CNB should not be rewarded for its recalcitrance.

**Procedural History.**

5.  Debtors filed their Second Amended Plan of Reorganization under cover of their Motion to Approve on May 1, 2012 (Doc. 133) (the "Plan"). The Plan was confirmed by Order dated May 15, 2012 (Doc. 139) ("Conf. Order"), and the case was closed pursuant to a Final Decree entered on March 4, 2013 (Doc. 170).

6.  Debtors are in compliance with all other aspects of their Second Amended Plan of Reorganization (Doc. 133) (the "Plan"), and no other creditor has joined in CNB's current efforts.

7.  The procedural history relevant to CNB's Motion for Judgment begins with CNB's earlier motion to reopen this case on April 27, 2014 (ECF 171).

8.  The hearing on the motion was adjourned several times while CNB and Debtors negotiated the exchange of documents Debtors believed to be necessary for CNB to prove the amount claimed to be owed, and discussed possible settlement.

9.  Because of CNB's steadfast refusal to provide any of Debtors' financing documents or enter into good faith settlement discussions, the parties appeared before this Court

on September 18, 2014.  Docket Entry ECF 183 states that the hearing was held and adjourned to November 20, 2014.

10. Following the September 18, 2014 appearance and before the case was re-opened, the undersigned as counsel to Debtors continued Debtors' efforts to obtain documents that would demonstrate that CNB's claim for judgment was valid.  *See* Exhibit **A** hereto (September 26, 2014 letter from the undersigned Debtors' Counsel to CNB's counsel M.C. Manniello requesting documents.)  As with prior requests, CNB has failed or refused to provide any documents.

11. On October 23, 2014, the undersigned Debtors' counsel wrote a second time to CNB's counsel, explaining why documents would ultimately have be produced and reminding CNB's counsel that Debtors had engaged in a year-long effort to resolve this situation, with the most significant reaction from CNB during that year being to terminate its prior lawyer for reaching an understanding with Debtors.  *See* Affidavit of debtor Joseph F. Uvino in Opposition to Motion for Judgment at ¶¶ **6-7** (summarizing the negotiations between Debtors and CNB).  In my October 23 letter I told CNB's counsel that Debtors had rights to the documents, both as former clients of CNB and as litigants, and production had to be the starting point.  I added the obvious, that "there are better ways to resolve these issues" than motion practice before this Court.  *See* Exhibit **B** hereto (October 23, 2014 letter from Debtors' Counsel to CNB's counsel, repeating request for documents).

12. On November 10, 2014, Debtors joined in CNB's effort to re-open the case by filing and serving a Cross-Motion to Reopen Case (ECF 185).  Debtors' goals in re-opening the case are to obtain complete documentation from CNB of their financing and refinancing transactions and to recover assets wrongfully paid to CNB.

13. On November 24, 2014, an Order was entered re-opening this case (ECF 191). The document was mistakenly entitled "Notice of Motion to Re-Open Case," but the Docket Entry confirms that an Order was intended.

14. CNB filed and served this Motion for Money Judgment on October 14, 2014 (ECF 184). The Motion was mistakenly entered in the Docket Report for this case as "Notice of Entry of Judgment." The Motion was filed before the case was reopened and accordingly was premature. *See In re Fibermark, Inc., Fibermark North America, Inc. and Fibermark Int'l Holdings, LLC*, 369 B.R. 761, 768-69 (D.Vt. 2007)(on motion to reopen, court considered underlying document only to address whether it would have jurisdiction after reopening, and did not consider the underlying dispute).

**CNB's Questionable Promissory Notes**

15. It is not disputed that the Plan provides for CNB to receive 100% of its claim of $664,862.22 over five years (Conf. Order ¶ 27). This provision in the Plan was based on CNB's allegation that Debtors were obligated to CNB under an unsecured promissory note with a term of eight (8) weeks dated August 5, 2008, the $664K Note. As outlined in the attached affidavit of Joseph F. Uvino in Support of this Opposition (the "Uvino Aff."), Debtors have concluded after further investigation that the obligation represented by the $664K Note appears to have been previously refinanced into a Secured Note in October 2007 (the "Secured Note"). See Uvino Aff. ¶¶ **10-14**. Debtors base their conclusion on account papers in their possession showing that the CNB account on which the $664K Note was issued was discharged in a refinancing that took place in October 2007. These files had been missing at the time of the filing and confirmation of the Second Amended Plan, and the Uvinos recovered and reviewed

those files only after confirmation. Uvino Aff. ¶¶ **10-14**. Upon reaching this conclusion the Uvinos immediately contacted counsel to CNB. Uvino Aff. ¶¶ **5-7**.

16. The Uvinos also question a payment demand CNB made on Bank of America at the time of a second refinancing in May 2008 (the "May 2008 Refinancing"), at which time Bank of America, the new lender in the refinancing, paid the amount of $488,000 pursuant to a letter of instruction issued by CNB. CNB did not disclose at the time, however, that shortly after the October 2007 refinancing described above, CNB executed a Satisfaction of Mortgage for the mortgage securing the note for $488,000 (the "$488K Note"). See Uvino Aff., ¶¶ **15-17**, discussing the Satisfaction of Mortgage attached (under CNB's March 20, 2008 letter to Debtors) as Exhibit 1 to the Sept. 26, 2014 letter from Debtors' Counsel Schager to CNB's Counsel Manniello, which is Exhibit **A** hereto. The Satisfaction acknowledges that CNB "has received full payment and satisfaction" of "an indebtedness in the amount of $488,000" and in consideration thereof did "hereby discharge said mortgage." *Id.* Contrary to this Satisfaction, however, in May 2008 CNB collected that amount a second time, at the closing of the May 2008 Refinancing of the Secured Note. Uvino Aff. ¶ **16**.

17. Following our September 18, 2014, appearance before this Court on CNB's motion to re-open, I discussed with CNB's counsel, Michael C. Manniello, Esq., the production of documents that would address these issues. On September 26 I wrote to Mr. Manniello (Exhibit **A** hereto) setting forth the bases for Debtors' belief that certain payments had been made twice. After receiving his response stating that CNB did not want to "relitigate" the obligations, I wrote to Mr. Manniello again on October 23 (Exhibit **B** hereto), noting that Debtors were entitled to the requested information both in their capacity as Debtors-in-Possession with the duty to recover the assets of the Estate and in their capacity as former

banking clients of CNB who were entitled to information regarding their accounts. While Mr. Maniello has represented that CNB was looking for documents, implicitly acknowledging that Debtors are entitled to the documents they have requested, at this writing no responsive documents have been provided.

18. Several new issues have now been raised that were not previously litigated. When they prepared their Plan Debtors did not dispute the amount CNB claimed; it was only after reviewing previously missing bank records that Debtors realized the bank had likely been paid already on the $664K Note and paid twice on the $488K Note. Uvino Aff. at ¶¶ **4-7**.

19. On the $664K Note, the factual issue is whether the obligation represented by the Note had been refinanced into the Secured Note at the October 2007 Refinancing. This is not an issue that was previously addressed in this bankruptcy proceeding – all the Plan did was to provide CNB with a schedule for payment of the face amount of the $664K Note, assuming its validity. A second principal issue is whether the $488K Note was discharged twice, once at the time CNB reported it as fully paid and satisfied, and a second time pursuant to CNB's payment instruction to Bank of America in the May 2008 Refinancing.

20. Under New York law, issue preclusion (or collateral estoppel) does not apply to a "cause of action [that] centers upon events that predated the bankruptcy filing and raises issues that were not addressed in the course of the bankruptcy proceeding." *Loving v. Abbruzzese*, 298 A.D.2d 749, 752 (3d Dep't 2002). The two principal issues outlined in paragraph **19** were not litigated in the course of the bankruptcy proceeding, and Debtors are not precluded from litigating them now.

21. A state court proceeding related to the $664K Note is an option under *Loving*, and no question is presented as to Debtors' rights to litigating the $488K Note in state court.

However, this Court has jurisdiction over the $664K Note because it is the basis for CNB's claim, and the Court has ancillary jurisdiction over the $488K Note. *Fibermark*, 369 B.R. at 768 (sending the dispute to state court "would serve no purpose and would waste the resources already invested by the parties and this Court").

22.  Section 350(b) of the Bankruptcy Code permits this Court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Motions to re-open are liberally granted to accord debtors the kind of relief sought here. *In re Dodge*, 138 B.R. 602 (E.D. CA. Bankr. 1992); *Matter of Tettemnier*, 113 B.R. 757 (S.D. Fla. Bankr. 1990); 2 Norton Bankr. L. & Prac. § 40.3 (2014). The funds Debtors seek to recover from CNB are funds they have paid in excess of the amounts to which CNB is entitled, and Debtors are entitled to relief from CNB's efforts to collect a second time on obligations that have been satisfied.

**Debtors have Demonstrated the Need for Discovery**

23.  Before any motion to enforce the Plan or for any judgment under the Plan can be addressed, the first task for the parties is to complete discovery on Debtors' claims against CNB for the following amounts:

    (a)    For collecting payments on a promissory note with a term of eight (8) weeks and a principal amount $664,852 (the "$664K Note"), when the obligation had actually been refinanced into a larger, secured obligation that was later discharged by a subsequent refinancing with a separate bank; and

    (b)    For $488,000, based on CNB's receipt of a second payment of such amount after CNB previously (i) acknowledged Debtors' prior discharge of the obligation and

(ii) filed a satisfaction of the mortgage securing the obligation (the "$488K Note").

24. Debtors have set forth the reasons for questioning the validity of the $664 Note that was the basis for CNB's claim in the case, and also on whether CNB previously was paid twice on the $488K Note. CNB's Motion for Judgment should be denied and the parties should proceed with discovery.

WHEREFORE, Debtors pray that this Court deny CNB's Motion for Judgment and permit Debtors to obtain complete documentation from CNB of their financing and refinancing transactions, to permit Debtors to recover assets wrongfully paid to CNB as a general, unsecured creditor, and for such other and further relief as may be just, proper and equitable.

Dated:

New York, New York
December 11, 2014                             STAMELL & SCHAGER, LLP


                                              By: /s/ Richard J. Schager, Jr.
                                              555 Fifth Ave., Ste. 1400
                                              New York, New York 10017
                                              Telephone:   (212) 566-4057
                                              Facsimile:   (212) 566-4061
                                              E-Mail:  schager@ssnyc.com

                                              *Counsel to Debtors*
                                              *Joseph F. Uvino and Wendy M. Uvino*

To:

Michael C. Manniello, Esq.                    Serene K. Nakano, Esq;
Peter T. Roach & Assocs., P.C.                Office of the United States Trustee
125 Michael Drive, Ste. 105                   201 Varick St., Room 1006
Syosset, NY 11791                             New York, NY 10014
*Counsel to City National Bank*               *Office of the United States Trustee*

Maureen T. Bass, Esq.
Buchanan Ingersoll & Rooney, P.C.
50 Fountain Plaza, Ste. 1230
Buffalo, NY 14202
*Counsel to Bank of America, N.A.*

Brian J. Lester, Esq.
Tarbet, Lester & Schoen, PLLC
P.O. Box. 2635
Amagansett, NY 11930
*Counsel to East Hampton
Fence, Inc.*

Eli J. Rogers, Esq.
Dreifuss Bonacci & Parker LLP
26 Columbia Turnpike, N.Entr.
Florham Park, NJ 07932
*Counsel to J. Barrows, Inc.*

Michael T. Sucher, Esq.
26 Court Street
Suite 2412
Brooklyn, NY 11242
*Counsel to F. Schneider
Construction Corp.*

Andrew Goldberg, Esq.
Rosicki, Rosicki & Assocs., P.C.
51 East Bethpage Road
Plainview, NY 11803
*Counsel for CitiMortgage, Inc.*

Martin A. Mooney, Esq.
Deily, Mooney & Glastetter, LLPL
8 Thurlow Terrace
Albany, NY 12203-1006
*Counsel to DCFS USA, LLC &
Mercedes-Benz Financial Services USA, LLC*

Fred Stevens, Esq.
Klestadt & Winters, LLP
570 Seventh Ave., 17th Floor
New York, NY 10018
*Counsel to J. Barrows, Inc.*

Avrum J. Rosen, Esq.
Law Offices of Acrum J. Rosen, PLLC
38 New Street
Huntington, NY 11743
*Counsel to Debtors*