Hearing Date: Dec. 18, 2014
Hearing Time: 10:00am

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>JOSEPH F. UVINO and WENDY M. UVINO,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-15225 (CGM) |

**AFFIDAVIT OF DEBTOR JOSEPH F. UVINO IN
OPPOSITION TO MOTION FOR MONEY JUDGMENT
OF CREDITOR CITY NATIONAL BANK**

Joseph F. Uvino, being duly sworn, does depose and say:

1. I am one of the two co-Debtors in Possession in the above-captioned case. The other co-debtor is my wife, Wendy M. Uvino (collectively, "Debtors"). I make this affidavit, as one of the two Debtors, in opposition to the "Motion for Judgment" of creditor City National Bank ("CNB" or "Applicant").

2. CNB's motion should be denied as premature because discovery is necessary, and CNB has conceded that discovery is necessary for the following reasons:

(a) To confirm that CNB is entitled to *any* the amounts it has claimed in this proceeding. The validity of CNB's promissory note, a note for $664,852 with a term of eight weeks (the "$664K Note"), was not previously litigated, and documents found since the confirmation of the Plan indicate that the note was refinanced into a larger, secured obligation that was later discharged by a subsequent refinancing with a different bank. To date CNB has refused to provide any loan transaction documents to demonstrate otherwise.

(b) To determine whether CNB is liable to Debtors in the amount of $488,000, due to CNB's receipt of a second payment of this amount after CNB previously (i) acknowledged Debtors' prior discharge of the obligation and (ii) filed a satisfaction of the mortgage securing the obligation (the "$488K Note").

3. At the time of filing and confirmation of our Second Amended Plan of Reorganization (the "Plan") and the entry of a Final Decree, Wendy and I (the Debtors-in-Possession) were missing certain files regarding our multiple financing transactions with CNB. Nevertheless, owing to our longstanding relationship with executives in the New York branch of CNB, we agreed to include in the Plan a payment schedule relating to the $664K Note.

4. When we did recover some of the files and examined them, one of the things we found was that CNB had been paid twice to discharge the $488K Note – CNB had filed a satisfaction of Mortgage for the $488,000 obligation described in ¶ **2(b)** above (the $488K Note), yet CNB had then proceeded to collect that amount a second time in May 2008, when we refinanced our CNB debt with Bank of America. Following this discovery, we then questioned whether CNB was owed the money it claimed to be owed under the $664K Note. We concluded it was not and gave CNB the opportunity to rebut out conclusion with documents from its loan files. Notwithstanding that these are *our documents as CNB's financing clients*, to date CNB has failed or refused to provide them.

5. At the time the $664K Note was executed Wendy and I were operating under tremendous personal stress. This Note was executed shortly after Wendy's employer, Lehman Brothers, filed for bankruptcy, a deeply traumatic event that ended her employment and destroyed years of savings held by Lehman as deferred compensation. Because of the contemporaneous circumstances, neither of us has any recollection of the reasons for the execution of this note, under which we borrowed a large amount of money for a term of only eight weeks. The $664 Note had a maturity date that was nearly *one year prior to our Petition Date*; while we may have made payments on the Note pre-petition from CNB's deductions from our bank accounts, there is no record of any extension of the maturity date or intervening

-2-

collection actions. While we have now recovered information that leads us to doubt the amount allegedly owed to CNB, our files from that period are incomplete; we repeatedly have sought the documentation from CNB to confirm that this is a valid debt. While our dealings were always with CNB's New York City office, this matter was taken over by the home office in Los Angeles, which has stonewalled us for over 2 years.

6.  Because of the lack of documentation and the uncertainty regarding the amounts actually owed to CNB, beginning in late 2012 I had several months of discussions and negotiations with attorney Thomas J. Luz, of Karaahmet Luz & Greenberg, LLP, then acting as CNB's counsel. To the best of my recollection, I provided Mr. Luz with documents we possessed – or had detailed conversations – which brought into question some of the actions of his client, including the double payment of the $488K Note and the inability of the bank to provide adequate proof that it was owed $664,852. Mr. Luz and I had agreed upon the outlines of a potential settlement of CNB's claims that he was going to discuss with the CNB executives in Los Angeles. As a sign of good faith, we agreed to make a second $30,000 payment under the payoff schedule included in the Plan (a first $30,000 payment had been made prior to the review described in ¶¶ **2-4** above). It was our understanding with Mr. Luz that, should the $664,852 be found not to be owed, or that we were entitled to set off the double payment of the $488K Note, we would get credit for these $60,000 of payments.

7.  We understand Mr. Luz brought to his client the settlement proposal he and I had developed. Sometime in the first quarter of 2013, I had a telephone conference with Mr. Luz and two CNB employees located in Los Angeles. The bank's executive in New York City with whom we had a close professional relationship no longer was involved in the matter – in fact, he was specifically instructed not to speak with us. During the conversation with the two CNB

-3-

employees in Los Angeles, I explained the issues I saw, similar to what I previously did with Mr. Luz.  The bank officials took note of our positions and requested that we furnish CNB additional information, so that our settlement proposal could be considered.  Wendy and I provided the requested information.  We heard nothing further from CNB.  It was only after we were served papers by CNB's new counsel, Michael C. Manniello of the firm of Peter T. Roach & Assocs., P.C., that we learned Mr. Luz was terminated as CNB's counsel shortly after this conference call with CNB's two Los Angeles employees.

8.    After CNB terminated Mr. Luz and caused its new counsel to file its Motion to Reopen, we contacted Mr. Manniello in order to attempt to revive the prior settlement discussions.  Wendy and I traveled to Mr. Manniello's office on Long Island and made a detailed presentation to get him up to speed.  Thereafter, Mr. Manniello advised us that CNB once again wanted additional information from us in order to make a decision.   Again, we provided CNB with the information, much of which had previously been requested by and provided to Mr. Luz.  When we followed up with Mr. Manniello prior to a scheduled hearing before this Court, we were told CNB needed yet more information, while it still provided us with nothing.  Thereafter Mr. Manniello advised us, with no substantive follow-up to our prior discussions and no comments on the documents we had provided, that CNB did not wish to continue settlement discussions and would be pursuing its remedies in court.  Implicit in this was that CNB would provide no documents to us as its former banking clients, and to date it has not done so.

9.    Since it appeared that any further conversations with CNB would be fruitless, we retained our present counsel, Richard Schager of Stamell & Schager, LLP.  Mr. Schager filed a Notice of Appearance and appeared before the Court on September 18, 2014, and on our behalf filed and served our Cross-Motion to Re-open on November 10, 2014 (ECF 185).

-4-

10. Working through Mr. Schager, Wendy and I renewed our efforts to obtain documents from CNB. With respect to the $664K Note at issue, we explained that we had no recollection of executing this eight-week Note or the circumstances surrounding it, and that, based upon information recovered after confirmation of the Plan, we believed the $664K Note actually represented obligations that had been refinanced in October 2007. Through Mr. Schager we further explained that the obligation is described as Note No. 4 on Account 716393, and that this Account 716393 was to have been closed and all amounts were to have been refinanced at an "October 2007 Refinancing." See Schager Affirmation in Opposition to CNB's Motion for Money Judgment submitted herewith, Ex. **A**, at p. 2 (Sept. 26 letter from Debtors' Counsel Schager to CNB's counsel Manniello).

11. In September 2007, this Account 716393 had a principal amount open of $2,520,792. CNB described this principal amount as Note No. 3 on Account 716393. It was unsecured. At that time we also had outstanding with CNB a secured Promissory Note in the amount of $488,000 (the $488K Note identified above), which was CNB's earlier loan to finance Wendy's and my purchase of unimproved property in Suffolk County, New York. This $488K Note was secured by a mortgage on the property. CNB described this obligation as Note No. 4 on Account 712207, a different account CNB maintained for us. Schager Aff., Ex. **A**, at p. 2.

12. At the October 2007 Refinancing we substituted for the unsecured Note No. 3 in Account 716393 (described in the prior paragraph) a new Note, which CNB described as Note No. 73093 on Account 712207, in the amount of $2,512,000 and secured by a mortgage for that amount (the "$2,512,000 Note"). CNB later stated (see the "Amended Payoff Statement"

described in ¶ **16** below[1]) that this mortgage was recorded at "Liber M00021638, Page 334 in the official records of New York, New York County" on November 28, 2007 – we believe CNB's reference to New York County is in error and the correct county was Suffolk. The Liber reference may be M0002163<u>9</u> – the photocopy is not clear. CNB's loan file should clarify both of these items.

13. The purpose of the October 2007 Refinancing was to provide CNB with security in the form of a mortgage for the obligations outstanding on Account 716393 and to reduce the interest rate we were paying CNB – the $2,520,792 obligation for construction financing previously shown on Account 716393 was now the $2,512,000 Note secured by a mortgage. Between the $2,512,000 Note and the $488,000 Note, Account 712207 was described as having a balance of $3,000,000.

14. Wendy's and my recollection is that this October 2007 Refinancing satisfied all of the obligations on Account 716393. Accordingly, we requested CNB to provide us with the original of the $664K Note (Note No. 4 on Account 716393) and for the other documents in CNB's loan files for Account 716393, which should indicate the source of the obligation and use of any funds advanced, and should explain why a Note of this short duration was used after the Account was to have been closed. See Schager Aff., Ex. **A** at p. 2 (Sept. 26 letter from Debtors' Counsel Schager to CNB's Counsel Manniello.) As of the date of this Affidavit CNB has failed or refused to provide any information or documentation.

---

[1] The Amended Payoff Statement is attached as Exhibit **2** to the Sept. 26, 2014 letter from Debtors' Counsel Schager to CNB's Counsel Manniello, which is Exhibit **A** to the Schager Aff. submitted herewith.
.

15. We also question a payment demand CNB made on Bank of America at the time of a refinancing of all of our CNB debt in May 2008 (the "May 2008 Refinancing"). At the closing of the May 2008 refinancing, CNB demanded payment for the $488K Note discussed above (Note No. 4 on Account 712207), and Bank of America paid on the demand. But on November 20, 2007, shortly after the October 2007 Refinancing, CNB had already executed a Satisfaction of Mortgage for the mortgage securing this $488K Note. A copy of the Satisfaction is attached (under CNB's March 20, 2008 letter to us) as Exhibit **1** to the Sept. 26, 2014 letter from Debtors' Counsel Schager to CNB's Counsel Manniello, which is Exhibit **A** to the Schager Aff. submitted herewith. The date of execution of the Satisfaction is noted in the acknowledgement. The attached Recording Page of the Suffolk County Clerk indicates it was recorded on January 25, 2008. The Satisfaction acknowledges that CNB "has received full payment and satisfaction" of "an indebtedness in the amount of $488,000" and in consideration thereof did "hereby discharge said mortgage."

16. At the May 2008 Refinancing, CNB presented an "Amended Payoff Statement." It demanded payment of $3,000,000, but that letter tendered only the second mortgage of $2,512,000 – since the $488K Note had been declared satisfied and a Satisfaction of the Mortgage had been filed five months earlier. A copy of this Amended Payoff Statement Letter is attached as Exhibit **2** to the Sept. 26, 2014 letter from Debtors' Counsel Schager to CNB's Counsel Manniello, which is Exhibit **A** to the Schager Aff. submitted herewith. It indicates that at the May 2008 Refinancing CNB collected the $488,000 from Bank of America a second time. In light of this double payment of the $488K Note, we requested that CNB provide (i) the originals of the $488,000 and Second Secured Notes, (ii) the Satisfactions of mortgage, and (iii) the other documents in CNB's loan files for Account 712207 regarding payments and discharge of the two Secured Notes and the satisfaction of the two mortgages.

17. This request would include documents in CNB's files from the May 2008 Refinancing with Bank of America, and an explanation of why CNB demanded payment of an amount that included the $488,000 obligation it previously had acknowledged as satisfied.

18. CNB has refused to respond to these requests for documents, notwithstanding that as clients of CNB we were entitled to documents relating to our borrowing from and discharging our obligations to CNB. More troubling is the fact that during the time of our dealings with CNB, we had paid the bank over $360,000 in interest payments on various notes.

19. CNB has claimed that documenting the fact it is entitled to the money it claims would be "re-litigating" the promissory notes. In the course of this proceeding, however, we never litigated either of the promissory notes. All we sought to do in the proceeding was to prevent foreclosure on our property, and it was not until after the case was closed in March 2013 (Doc. 170) that we became aware of these claims. CNB's refusal to simply document its purported rights as creditors plainly suggests it is hiding the fact that it has collected twice on one obligation and is now attempting to collect twice on a second obligation.

20. As Debtors-in-Possession in this proceeding, if CNB has wrongfully received money not otherwise owed, we have an obligation to the Estate to seek its recovery.

21.     Therefore, we moved to reopen this case to obtain relief and the authority to proceed with discovery and a suit against CNB to obtain the documents described above and to collect excess payments we have made.

        /s/ Joseph F. Uvino

Joseph F. Uvino,
Debtor In Possession

Sworn to before me at New York, New York
this 11th day of December, 2014.

    /s/ Richard J. Schager, Jr.
        Notary Public
No. 02SC4834248
Qualified in Kings County
Commission expires March 30, 2015